STEPHANIE I. SPRECHER
Acting United States Attorney
JASMINE M. PETERS (WY Bar #7-5714)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82001
Telephone: (307) 772-2984
jasmine.peters@usdoj.gov



# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 25-CV-109-ABJ |
| | ) | |
| BRETT M. LATTIN; POWDER HORN | ) | |
| HOMEOWNERS ASSOCIATION, INC.; WELLS | ) | |
| FARGO BANK, N.A.; COLLECTION | ) | |
| PROFESSIONALS, INC.; and SHERIDAN | ) | |
| COUNTY, WYOMING, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT TO FORECLOSE LIEN

The United States of America, by and through the Acting United States Attorney for the District of Wyoming and Assistant United States Attorney Jasmine M. Peters, brings this *Complaint to Foreclose Lien* pursuant to 28 U.S.C. §§ 2001–2003 and 18 U.S.C. §§ 3613 and 3664, to foreclose the federal lien against Defendant Brett M. Lattin.

### JURISDICTION AND VENUE

1. Jurisdiction is vested in the United States District Court for the District of Wyoming pursuant to 18 U.S.C. § 3613(a).

2.  The United States District Court for the District of Wyoming is the proper venue because the property subject to sale is situated in Sheridan, Wyoming. Upon information and belief, Defendant Brett M. Lattin is a resident of Sheridan, Wyoming. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1)–(2).

## PARTIES

3.  Plaintiff is the United States of America.

4.  Defendant Brett M. Lattin was found guilty of Conspiracy to Commit Mail and Wire Fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1349 in Docket No. 2:10-cr-00088-ABJ. On June 18, 2010, Defendant Lattin was sentenced to forty-one months of imprisonment, three years of supervised release, $2,450,000 in restitution, and a $100 mandatory special assessment. Defendant Lattin's last known address is 10 Oaktree Court, Sheridan, Wyoming 82801-8000 (property).

5.  Defendant Powder Horn Homeowners Association, Inc. is named a party to this action because it may have a claim pursuant to a Lien Statement, recorded on January 24, 2022, Instrument No. 2022-775924.

6.  Defendant Wells Fargo Bank, N.A. is named a party to this action pursuant to the Mortgage executed by Defendant Lattin and in favor of Stifel Bank & Trust (MERS), dated July 2, 2020, and assigned to Defendant Wells Fargo at Instrument No. 2022-780999, recorded August 22, 2022.

7.  Defendant Collection Professionals, Inc. is named a party to this action because it may have a claim pursuant to the Judgment entered against Defendant Lattin in Docket No. CV2021-917 in the Fourth Judicial District Court, Wyoming on December 21, 2021.

8.  Defendant Sheridan County, Wyoming is named a party to this action because it may have a claim pursuant to any unpaid taxes related to the property.

## GENERAL ALLEGATIONS

9. This is an action to foreclose real property located in Sheridan, County, Wyoming, that is subject to a criminal judgment lien against Defendant Lattin.

10. On March 22, 2010, the United States filed an Information against Defendant Lattin. Ex. 1 (Docket No. 2:10-cr-00088-ABJ, Doc. 1).

11. On March 30, 2010, Defendant Lattin entered a Guilty Plea before a United States Magistrate Judge. Ex. 2 (Docket No. 2:10-cr-00088-ABJ, Doc. 7).

12. On June 18, 2010, Defendant was sentenced to forty-one months of imprisonment, three years of supervised release, $2,450,000 in restitution, and a $100 mandatory special assessment. Ex. 3 (Docket No. 2:10-cr-00088-ABJ, Doc. 15).

13. Pursuant to 18 U.S.C. § 3613(c), upon the pronouncement of the sentence on June 18, 2010, a lien arose against all property rights belonging to Defendant Lattin.

14. On July 12, 2010, the United States perfected its lien by recording notice of it in the Official Public Records of the Sheridan County Clerk/Recorder at Instrument No. 673980, Book 2, Page 103. Ex. 4 (US Notice of Lien).

15. As of May 1, 2025, $2,348,529.56 remains outstanding on Defendant Lattin's criminal debt.

16. Defendant Lattin owns the real property located at 10 Oak Tree Court, Sheridan, Wyoming 82801-8000, with the following legal description:

> Lot 23, Block BB, Powder Horn Ranch II Planned Unit Development. A subdivision in Sheridan County, Wyoming, filed as Plat P-67 in the Office of the Sheridan County Clerk.

Ex. 5 (Title Search Report); Ex. 6 (Warranty Deed).

17. An Assignment of Mortgage was granted to Defendant Wells Fargo for the property on August 22, 2022, recorded on August 22, 2022, at Instrument No. 2022-780999. Ex. 7 (Assignment of Mortgage). The Mortgage was for $480,000, recorded July 2, 2020, at Instrument No. 2020-759764. *Id.*; *see also* Ex. 8 (Mortgage).

18. August 15, 2022, Rathmar LLC assigned a judgment entered against Defendant Lattin in the Circuit Court, Fourth Judicial District, Sheridan County, Wyoming, Docket No. CV2021-917, to Defendant Collection Professionals, Inc. in the amount of $3,786.15. Ex. 9 (Assignment of Judgment); *see also* Ex. 10 (Small Claims Judgment).

19. On January 18, 2023, a Default Judgment was entered against Defendant Lattin in favor of Defendant Powder Horn Homeowners Association in the Circuit Court, Fourth Judicial District, Sheridan County, Wyoming, Docket No. CV-2022-113, in the amount of $7,043.58. Ex. 11 (HOA Default Judgment). A Lien Statement was recorded on January 24, 2022, at Instrument No. 2022-775924. Ex. 12 (HOA Lien Statement).

20. Defendant Lattin and Defendant Wells Fargo entered into a Loan Modification Agreement, providing for a fixed interest rate, recorded on September 8, 2023, at Instrument No. 2023-787593. Ex. 13 (Loan Modification).

21. Pursuant to 28 U.S.C. §§ 2001–2003, the United States seeks to foreclose its lien and sell the property, free and clear of all liens and encumbrances so that the net proceeds can be applied to the debt.

### CAUSE OF ACTION: FORECLOSURE OF LIEN

22. The United States incorporates paragraphs 1 through 21 as if fully stated herein.

23. By virtue of the Judgment in the criminal case, the United States holds a valid lien against all nonexempt property of Defendant Lattin.

24. As of May 1, 2025, $2,348,529.56 remains outstanding on Defendant Lattin's criminal debt.

25. The United States is entitled to foreclose on the property pursuant to 28 U.S.C. §§ 2001–2003 and apply the net proceeds from the sale to the outstanding debt.

**WHEREFORE**, the United States prays for the following relief:

a.    Order the foreclosure of the federal lien and judgment and order that Defendants' interest(s) in the property be sold free and clear of all liens, claims, and encumbrances, and in accordance with the law and practices of this Court;

b.    Order the property be sold in one unit;

c.    Order the proceeds of the sale of the property be distributed in the following order: (a) costs and expenses incurred in connection with the sale; (b) any valid taxes or assessments on the property; (c) any prior recorded liens; and (d) the remainder to the United States in partial satisfaction of Defendant Lattin's outstanding criminal debt;

d.    Grant to the United States any other relief circumstances may require, as the Court deems just and proper.

Dated May 1, 2025.

STEPHANIE I. SPRECHER
Acting United States Attorney

By: _____

JASMINE M. PETERS
Assistant United States Attorney

Page 5 of 5

ORIGINAL
FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

MAR 22 2010

Stephan Harris, Clerk
Cheyenne

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

UNITED STATES OF AMERICA,    )
             )   No. ___10-CR-88-J___
    Plaintiff,    )
             )   **18 U.S.C. §§ 1341, 1343 and 1349**
    v.    )   (Conspiracy to Commit Mail and
             )   Wire Fraud)
BRETT MATHEW LATTIN,    )
             )
    Defendant.    )

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

Beginning on or about October 12, 2006, and continuing through on or about October 17, 2007, in the District of Wyoming and elsewhere, the defendant, **BRETT MATHEW LATTIN**, and Mark Allan McGregor did knowingly, intentionally and unlawfully combine, conspire, confederate and agree with each other to commit mail and wire fraud by devising and executing a scheme to defraud Marathon Oil Corporation by means of false and fraudulent pretenses, representations, promises, and omissions in violation of 18 U.S.C. §§ 1341, 1343 and 1349.

### DESCRIPTION OF THE OFFENSE

At all times relevant to this information, unless otherwise indicated:

1.    The defendant, **BRETT MATHEW LATTIN** ("LATTIN") resided in Sheridan, Wyoming. From approximately August 1, 2006, until November 2, 2006, Lattin was employed by Production Services Network ("PSN"). Marathon Oil Company contracts with PSN to provide staff for operations and development in the field. Lattin was employed through PSN in the position of



Construction Supervisor. Between November 27, 2006, and October 4, 2007, Lattin was employed by Marathon in the position of Construction Supervisor in the Sheridan, Wyoming field office.

2.    Mark Allan McGregor ("McGregor"), resided in Rock Springs and Sheridan, Wyoming. McGregor provides contract services for oil and gas exploration and production companies. He owns and operates Sweetwater Trucking, Inc. ("Sweetwater Trucking"), a corporation organized and existing under the laws of the State of Wyoming, with its principle place of business in Rock Springs, Wyoming. From at least November 3, 2006, through October 17, 2007, McGregor owned and operated M & L Services, LLC ("M&L Services"), a Limited Liability Company organized and existing under the laws of the State of Wyoming, with a principle place of business in Sheridan, Wyoming.

3.    Marathon Oil Corporation ("Marathon") is a corporation organized and existing under the laws of the State of Delaware and headquartered in Houston, Texas. Marathon is a worldwide oil and gas exploration and production company, with field offices in Gillette and Sheridan, Wyoming.

4.    Through its subsidiaries Marathon Oil Company and Pennaco Energy, Inc., Marathon produces coal bed methane ("CBM") gas from wells in the Powder River Basin located in northeastern Wyoming. A byproduct of extracting the CBM gas is water, which sometimes has a high sodium content and must be evaporated or used in a manner that prevents it from returning directly into the aquifer or to the surface water. Marathon used earthen reservoirs to contain water from the CBM gas production and slowly let it seep back into the ground and not resurface.

2

5.      In approximately March of 2006, two of the reservoirs began to leak and the CBM water flooded the fields of a private landowner. Later, on May 9, 2006, the Wyoming Department of Environmental Quality ("DEQ") issued Marathon a written notice to remedy or correct the leaking reservoirs. By the Fall of 2006, Marathon decided to fix the leaking reservoirs and line the other reservoirs with bentonite to mitigate the leaking. As a PSN and Marathon employee, **LATTIN** was responsible for supervising the reservoir repair project. When he became a Marathon employee, **LATTIN** reviewed and approved invoices submitted by contractors for construction work done by Marathon's contractors. In his capacity as an employee, he owed a fiduciary duty to act in good faith and with due regard to the interests of Marathon.

### THE SCHEME TO DEFRAUD

6.      On October 12, 2006, **LATTIN** submitted an employment application to Marathon which falsely stated he earned a degree in civil engineering from the Colorado State University with a 3.8 grade point average. By falsely stating in the application and interviews he earned a degree in civil engineering, **LATTIN** fraudulently represented himself to Marathon as a person qualified for the position of Construction Supervisor.

7.      **LATTIN** then approached McGregor – who **LATTIN** had previously worked for as an employee of Sweetwater Trucking – about contracting with Marathon to repair the reservoirs in exchange for a kickback. McGregor agreed to pay **LATTIN** a $.05 per square foot kickback for securing a contract with Marathon to repair the reservoirs at $.65 per square foot. To conceal the fraudulent agreement, McGregor and **LATTIN** agreed McGregor would use M&L Services to

3

contract with Marathon and pay the kickbacks through his Sweetwater Trucking accounts in the name of a person known to the United States.

8.      On November 17, 2006, **LATTIN** persuaded Marathon to bypass normal contracting procedures and enter – under a master service contract between with M & L Services and Marathon – a sole source job order for the repair of 7 reservoirs ("Job Order 1"). **LATTIN** did so by falsely representing M & L Services as the only company in the area with the specialized expertise and equipment necessary to repair the reservoirs when, in fact, he knew McGregor had never before performed the scope of work required to repair the reservoirs. Job Order 1's specifications required no less than eight pounds of bentonite per square foot tilled and blended into the top eight inches of the reservoirs' soil and no less than an inch of bentonite broadcast over the tilled and blended surface. By falsely stating bentonite was expected to increase in price in the coming year, **LATTIN** also secured for McGregor a contract price of $.65 per square foot and authorizing a maximum payment to McGregor of $1,466,506.

9.      The contract required McGregor to notify Marathon's representative when work had been completed. After inspecting and testing the work, Marathon's representative could either accept the work or notify McGregor how the work fails to comply with the contract. If necessary, McGregor was allowed to make corrections. Once the work was accepted, McGregor was required to submit invoices containing sufficient detail to support the charges and contain the approval of Marathon's representative.

10.     On November 27, 2006 – **LATTIN**'s first day as Marathon's Construction Supervisor and acting as its representative – McGregor submitted for payment, and **LATTIN** approved, two

4

invoices in the total amount of $190,668.99. The invoices falsely stated work had been performed meeting the contract's specifications to repair the first reservoir.

11.     After **LATTIN** approved the invoices submitted by McGregor, the invoices were sent to Pennaco Energy, Inc., a Marathon subsidiary, in Tulsa, Oklahoma for processing. Pennaco would then notify Marathon's Governance/Expense Express Department in its office in Findlay, Ohio, to submit payment to M & L Services. The payments occurred one of two ways. In some instances, Governance/Expense Express would issue a check and mail it, via United States Postal Service, to M & L Services, in Rock Springs, Wyoming. In other instances, a wire transfer would occur from Marathon's bank account at National City Bank in Cleveland, Ohio, to M & L Services' bank account in either Rock Springs or Sheridan, Wyoming.

12.     After the money was deposited or wired into the M & L Services bank account, McGregor would transfer the money to the Sweetwater Trucking bank account. McGregor would then pay **LATTIN**, by wire transfer or check, from Sweetwater Trucking, using the name and bank account of a person known to the United States.

13.     Between November 29, 2006, and December 4, 2006, McGregor submitted for payment, and **LATTIN** approved, four invoices in the total amount of $554,142.55. The invoices falsely stated work had been performed meeting the contract's specifications to repair four of the reservoirs.

14.     On December 8, 2006, **LATTIN** sought approval for a second sole source job order for McGregor to repair 15 additional reservoirs ("Job Order 2"). Job Order 2 was approved by

Marathon on December 19, 2006, under the same terms, conditions and specifications as Job Order 1, with a maximum authorized payment of $1,204,655.

15.     On December 26, 2006, McGregor paid **LATTIN** a $105,000 kickback from a portion of the proceeds they obtained from Marathon through the scheme to defraud.

16.     On January 9, 2007, McGregor submitted for payment, and **LATTIN** approved, two invoices in the total amount of $201,798.35. The invoices falsely stated work had been performed meeting the contract's specifications to repair two reservoirs under Job Order 1.

17.     On January 22, 2007, McGregor submitted for payment, and **LATTIN** approved, 15 invoices in the total amount of $602,324.17. The invoices falsely stated work had been performed meeting the contract's specifications to repair 15 reservoirs under Job Order 2.

18.     On February 15, 2007, McGregor paid **LATTIN** a $33,500 kickback from a portion of the proceeds they obtained from Marathon through the scheme to defraud.

19.     On March 22, 2007, McGregor paid **LATTIN** a $138,000 kickback from a portion of the proceeds they obtained from Marathon through the scheme to defraud.

20.     On April 2, 2007, McGregor submitted for payment, and **LATTIN** approved three invoices in the total amount of $214,500. The invoices falsely stated work had been performed meeting the contract's specifications to repair three reservoirs under Job Order 1.

21.     On April 21, 2007, McGregor submitted for payment, and **LATTIN** approved, four invoices in the total amount of $133,250. The invoices falsely stated work had been performed meeting the contract's specifications to repair four reservoirs under Job Order 2.

22.    On May 21, 2007, McGregor submitted for payment, and **LATTIN** approved, an invoice in the amount of $29,354. The invoice falsely stated work had been performed meeting the contract's specifications to repair a reservoir under Job Order 1.

23.    On June 19, 2007, Marathon approved **LATTIN's** request to increase the limit of the overall monetary amount allowed for M & L Services to submit invoices for payment under a Recurring Service Order ("RSO"). McGregor and **LATTIN** fraudulently billed under the RSO the repair of 3 additional reservoirs. Also under the RSO, Marathon began paying M & L Services for road work done under **LATTIN's** supervision and McGregor paid **LATTIN** a kickback from the money M & L Services received from Marathon for the road work.

24.    Between June 29, 2007, and October 17, 2007, Marathon paid M & L Services approximately $2,600,000 for road work under the RSO.

25.    On June 29, 2007, McGregor submitted for payment, and **LATTIN** approved, two invoices in the total amount of $73,287.18. The invoices falsely stated work had been performed meeting the contract's specifications to repair three reservoirs under Job Order 2.

26.    In addition, on June 29, 2007, McGregor submitted for payment, and **LATTIN** approved, an invoice in the amount of $114,999.90 for the repair of 135,294 square feet of a reservoir under the RSO. The invoice falsely stated the reservoir had been repaired under the same specifications as Job Orders 1 and 2. McGregor and **LATTIN** also increased the price of bentonite in the invoice to $.85 per square foot, claiming again the price of bentonite was increasing.

27.    On July 2, 2007, McGregor paid **LATTIN** a $65,000 kickback from a portion of the proceeds they obtained from Marathon through the scheme to defraud.

28.    On July 27, 2007, the DEQ sent a letter notifying Marathon that the same two reservoirs that leaked CBM water in March of 2006, were leaking again and CBM water was surfacing on the same fields of a private landowner. McGregor had been paid by Marathon for repairing the reservoirs under Job Order 1 when, in fact, the work had not been performed.

29.    As reservoirs began to leak that had already been invoiced and paid, McGregor purchased and received 148,000 square feet of Akwaseal bentonite mats for a total price of $78,444. McGregor and **LATTIN** used the bentonite mats because they could be installed quickly to stop the reservoirs from leaking – masking the fact that the reservoirs had not been lined as required by Job Order #1.

30.    On August 14, 2007, an attorney with Marathon met with **LATTIN** after the company had received the letter from DEQ. During the meeting, **LATTIN** falsely claimed the reservoir work was performed beyond the required specifications and, in fact, falsely stated M & L Services had lined the reservoirs with 13 pounds of bentonite per square foot. **LATTIN** also falsely claimed he inspected the work and falsely claimed the work had been tested by a local engineering firm.

31.    On August 17, 2007, McGregor paid **LATTIN** a $60,000 kickback from a portion of the proceeds they obtained from Marathon through the scheme to defraud.

32.    On September 9, 2007, McGregor submitted for payment, and **LATTIN** approved, two invoices for the bentonite mats used in an attempt to stop a reservoir in Job Order 1 from leaking CBM water that had surfaced on the fields of a private landowner. The invoices were submitted under the RSO, charging Marathon at a rate of $2.00 per square foot in a total amount of $302,000.

8

33.     On September 26, 2007, McGregor submitted for payment, and **LATTIN** approved, an invoice in the amount of $89,250 for the repair of 105,000 square feet of a reservoir under the RSO. The invoice falsely stated the reservoir had been repaired under the same specifications as Job Orders 1 and 2. McGregor and **LATTIN** also increased the price in the invoice to $.85 per square foot, claiming again the price of bentonite was increasing.

34.     On September 26, 2007, McGregor submitted for payment, and **LATTIN** approved, an invoice in the amount of $97,750 for the repair of 115,000 square feet of a reservoir under the RSO. The invoice falsely stated the reservoir had been repaired under the same specifications as Job Orders 1 and 2. McGregor and **LATTIN** also increased the price in the invoice to $.85 per square foot, claiming again the price of bentonite was increasing.

35.     On September 26, 2007, McGregor submitted for payment, and **LATTIN** approved, an invoice in the amount of $72,250 for the repair of 85,000 square feet of a reservoir under the RSO. The invoice falsely stated the reservoir had been repaired under the same specifications as Job Orders 1 and 2. McGregor and **LATTIN** also increased the price in the invoice to $.85 per square foot, claiming again the price of bentonite was increasing.

36.     On September 26, 2007, McGregor submitted for payment, and **LATTIN** approved, an invoice in the amount of $89,250 for the repair of 105,000 square feet of a reservoir under the RSO. The invoice falsely stated the reservoir had been repaired under the same specifications as Job Orders 1 and 2. McGregor and **LATTIN** also increased the price in the invoice to $.85 per square foot, claiming again the price of bentonite was increasing.

37.    On September 28, 2007, McGregor submitted for payment, and **LATTIN** approved, an invoice in the amount of $255,000 for the repair of 300,000 square feet of a reservoir under the RSO. The invoice falsely stated the reservoir had been repaired under the same specifications as Job Orders 1 and 2. McGregor and **LATTIN** also increased the price in the invoice to $.85 per square foot, claiming again the price of bentonite was increasing. Marathon held the payment of this invoice pending an audit of M & L Services.

38.    On October 3, 2007, McGregor paid **LATTIN** kickbacks of $30,000 and $70,000 from a portion of the proceeds they obtained from Marathon through the scheme to defraud.

39.    On October 4, 2007, **LATTIN**'s employment with Marathon was terminated. After **LATTIN** was terminated, McGregor submitted to Marathon additional invoices for payment in the total amount of $1,823,296.88. Some of the invoices were signed as approved by **LATTIN** after his employment with Marathon had been terminated.

40.    On October 17, 2007, McGregor paid **LATTIN** a $100,000 kickback from a portion of the proceeds they obtained from Marathon through the scheme to defraud.

41.    In total, the specifications of Job Orders 1 and 2, and the RSO's, required approximately 23,454 tons of granular bentonite be applied to the reservoirs; however, between November 2006 and October 2007, McGregor only purchased a total of 9,814.49 tons of granular bentonite.

42.    On December 20, 2007, Marathon completed its investigation which revealed a small presence of bentonite in a few reservoirs. Most of the reservoirs, however, were never lined with any amount of bentonite. In fact, most of the 9814.49 tons of granular bentonite McGregor

10

purchased for Job Orders 1 and 2 and the RSO's, remained in several piles near the unrepaired reservoirs.

43.      In total, Marathon paid McGregor approximately $5,001,921.51. From those proceeds, McGregor paid **LATTIN** kickbacks in the total amount of $601,500.

## THE MAILINGS

44.      On or about the following dates and for the purpose of executing the above-described scheme, **LATTIN** and McGregor knowingly caused the following checks to be sent, delivered, and moved by the United States Postal Service:

| Date of Payment | Check Amount | Mailed From: | Mailed to: |
|---|---|---|---|
| 12/14/06 | $744,811.54 | Governance/Expense Express Marathon Oil Company, d/b/a Marathon Petroleum Company 539 S. Main Street Findlay, OH 45840 | M & L Services P.O. Box 1384 Rock Springs, WY 82901 |
| 1/24/07 | $201,798.35 | Governance/Expense Express Marathon Oil Company, d/b/a Marathon Petroleum Company 539 S. Main Street Findlay, OH 45840 | M & L Services P.O. Box 1384 Rock Springs, WY 82901 |
| 3/6/07 | $542,658.39 | Governance/Expense Express Marathon Oil Company, d/b/a Marathon Petroleum Company 539 S. Main Street Findlay, OH 45840 | M & L Services P.O. Box 1384 Rock Springs, WY 82901 |
| 3/23/07 | $59,665.78 | Governance/Expense Express Marathon Oil Company, d/b/a Marathon Petroleum Company 539 S. Main Street Findlay, OH 45840 | M & L Services P.O. Box 1384 Rock Springs, WY 82901 |

## THE WIRES

45.     On or about the following dates and for the purpose of executing the above-described scheme, **LATTIN** and McGregor knowingly caused to be transmitted by wire in interstate commerce the following transfer of monies (or funds):

| Date of Wire | Wire Amount | Wired From: | Wired to: |
|---|---|---|---|
| 5/7/07 | $214,500.00 | Marathon Oil Company National City Bank Cleveland, Ohio | M & L Services Sheridan State Bank Account #523653 Sheridan, Wyoming |
| 5/17/07 | $133,250.00 | Marathon Oil Company National City Bank Cleveland, Ohio | M & L Services Sheridan State Bank Account #523653 Sheridan, Wyoming |
| 6/7/07 | $29,354.00 | Marathon Oil Company National City Bank Cleveland, Ohio | M & L Services Sheridan State Bank Account #523653 Sheridan, Wyoming |
| 7/3/07 | $493,489.20 | Marathon Oil Company National City Bank Cleveland, Ohio | M & L Services Sheridan State Bank Account #523653 Sheridan, Wyoming |
| 7/18/07 | $515,184.27 | Marathon Oil Company National City Bank Cleveland, Ohio | M & L Services Sheridan State Bank Account #523653 Sheridan, Wyoming |
| 8/13/07 | $671,946.31 | Marathon Oil Company National City Bank Cleveland, Ohio | M & L Services Sheridan State Bank Account #523653 Sheridan, Wyoming |

| Date of Wire | Wire Amount | Wired From: | Wired to: |
|---|---|---|---|
| 10/16/07 | $324,474.38 | Marathon Oil Company National City Bank Cleveland, Ohio | M & L Services Sheridan State Bank Account #523653 Sheridan, Wyoming |

All in violation of 18 U.S.C. § 1349.

CHRISTOPHER A. CROFTS
United States Attorney

By:    _L. ROBERT MURRAY_____
L. ROBERT MURRAY
Assistant United States Attorney

13

## PENALTY SUMMARY

**DATE:**                       **March 22, 2010**

**DEFENDANT NAME:**     **BRETT MATHEW LATTIN**

**VICTIM:**             **NO**

**OFFENSE AND PENALTIES:**

**OFFENSE:**            **18 U.S.C. §§ 1341, 1343 and 1349**
(Conspiracy to Commit Mail and Wire Fraud)

**PENALTIES:**

a)     NMT 20 Years (18 U.S.C. §§ 1341 and 1343);

b)     A Fine in an Amount Equal to the Greatest of (1) $250,000, (2) Twice the Gross Pecuniary Gain the Conspirators Derived from the Crime, Or, (3) Twice the Gross Pecuniary Loss Caused to the Victim of the Crime by the Conspirators (18 U.s.c. § 3571(b) and (d);

c)     3 Years Supervised Release;

d)     Pursuant to 18 U.S.C. §§ 3663 and 3663a, the Court Is Required to Order the Defendant to Pay Restitution to the Victim of the Offense, in an Amount to Be Determined at the Time of Sentencing, Which Could Be as Much as $2,450,000; and

e)     $100 Special Assessment

**AGENT:**    Rich Fanelli/FBI       **AUSA:**   L. Robert Murray
              Chris Lucas/USPS

**ESTIMATED TIME OF TRIAL:**     **INTERPRETER NEEDED:**

  _✓_  five days or less            ____  Yes
  ____  over five days             _✓_  No
  ____  other

**THE GOVERNMENT:**

  ____  will                        ____  The court should not grant bond because the defendant is not bondable because there are detainers from other jurisdictions

  _✓_  will not

**SEEK DETENTION IN THIS CASE.**

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

MAR 3 0 2010

Stephan Harris, Clerk
Casper

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Case No. __10-CR-88-J__ |
| | ) |
| v. | ) |
| | ) |
| BRETT MATHEW LATTIN, | ) |
| | ) |
| Defendant. | ) |

## WAIVER OF GUILTY PLEA BEFORE A UNITED STATES DISTRICT COURT JUDGE AND CONSENT TO GUILTY PLEA BEFORE UNITED STATES MAGISTRATE JUDGE

I hereby waive my right to appear before a United States District Court Judge to enter a

guilty plea and consent to a guilty plea before a United States Magistrate Judge.

_____
BRETT MATHEW LATTIN
Defendant

_____
MICHAEL J. KRAMPNER
Attorney for Defendant

Dated: March _30_, 2010

Approved:

_____
Michael R. Shickich
United States Magistrate Judge

GOVERNMENT
EXHIBIT
2
PENGAD-Bayonne, N.J.

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

JUN 18 2010

Stephan Harris, Clerk
Cheyenne

# United States District Court
## For The District of Wyoming

UNITED STATES OF AMERICA,

vs.

BRETT MATHEW LATTIN

**JUDGMENT IN A CRIMINAL CASE**

CASE NUMBER: 10-CR-088-01J

Michael J. Krampner
Defendant's Attorney

THE DEFENDANT:    pleaded guilty to count 1.

**ACCORDINGLY,** the court has adjudicated that the defendant is guilty of the following offense(s):

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. 1341, 1343 and 1349 | Conspiracy to Commit Mail and Wire Fraud | 10/12/2006 | 1 |

The defendant is sentenced as provided in pages 2 through 8 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of residence or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's USM No: **11493-091**

6/18/10
Date of Imposition of Sentence

Alan B. Johnson
United States District Judge

6/18/10
Date

GOVERNMENT
EXHIBIT
3
PENGAD-Bayonne, N.J.

DEFENDANT: Brett Mathew Lattin                                    Judgment-Page <u>2 of 8</u>
CASE NUMBER: 10-CR-088-01J

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 41 months.

The Court makes the following recommendations to the Bureau of Prisons:

Defendant be placed at a Facility in Yankton, SD.

The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons

before <u>1:00 pm on August 2, 2010</u> .

## RETURN

I have executed this Judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____ at _____ _____, with a certified copy of this Judgment.

                                    _____
                                    United States Marshal


By:                                 _____
                                    Deputy Marshal

DEFENDANT: Brett Mathew Lattin                                    Judgment-Page 3 of 8
CASE NUMBER: 10-CR-088-01J

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of 3 years.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

While on supervised release, the defendant shall not commit another federal, state or local crime.

The defendant shall abide by the standard conditions of supervised release recommended by the Sentencing Commission.

The defendant shall not use or possess a firearm, ammunition, dangerous weapons or destructive device. Supervised release shall be revoked for possession of a firearm.

The defendant shall not illegally possess a controlled substance. Revocation of supervised release is mandatory for possession of a controlled substance. The Court finds the defendant poses low risk for illegal drug use, and mandatory drug testing is waived.

The defendant shall make special assessment and fine payments as ordered by the Court and is required to notify the Court, through the Probation Office, of any material change in the defendant's economic circumstances that might affect the defendant's ability to meet these monetary obligations.

Pursuant to Public Law 108-405, Revised DNA Collection Requirements Under the Justice for All Act of 2004, the defendant shall submit to DNA collection while incarcerated in the Bureau of Prisons, or at the direction of the U.S. Probation Office.

The defendant shall comply with the standard conditions that have been adopted by this Court (set forth on the following page). If this judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of supervised release. The defendant shall comply with the following additional conditions:

The defendant shall not incur any new debt or credit without permission of the Probation Officer.

The defendant shall provide full financial disclosure to the Probation Officer, including detailed documentation of income and expenses.

The defendant shall cooperate with the Internal Revenue Service and file tax returns timely and lawfully, and pay back taxes, penalties and interest as determined by the Internal Revenue Service.

DEFENDANT: Brett Mathew Lattin                                    Judgment-Page 4 of 8
CASE NUMBER: 10-CR-088-01J

Any employment shall be subject to the prior approval of the Probation Officer.

The defendant shall refrain from any use or possession of alcohol and/or other intoxicants including over the counter medications used contrary to the recommended dosage, or the intentional inhalation of any substance, prescribed or otherwise, without the permission of the Probation Officer. Additionally, the defendant shall not enter establishments whose primary income is derived from the sale of alcohol.

The defendant shall not be permitted to gamble or frequent gaming establishments as long as restitution has not be paid in full.

DEFENDANT: Brett Mathew Lattin                                    Judgment-Page 5 of 8
CASE NUMBER: 10-CR-088-01J

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the Court or probation officer;

2)   the defendant shall report to the probation officer as directed by the Court or probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;

6)   the defendant shall notify the probation officer at least 10 days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the Court;

13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

DEFENDANT: Brett Mathew Lattin                                    Judgment-Page 6 of 8
CASE NUMBER: 10-CR-088-01J

## FINANCIAL PENALTIES

The defendant shall pay the following total financial penalties in accordance with the schedule of payments set out below.

| Count | Assessment | Restitution | Fine |
|-------|-----------|-------------|------|
| 1 | $100.00 | $2,450,000.00 | $0.00 |
| Totals: | $100.00 | $2,450,000.00 | $0.00 |

## FINE AND/OR RESTITUTION

The fine and/or restitution includes any costs of incarceration and/or supervision. The fine, which is due immediately, is inclusive of all penalties and interest, if applicable.

The defendant shall pay interest on any fine and/or restitution of more than $2,500, unless the fine and/or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the below payment options are subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

The court has determined that the defendant does not have the ability to pay interest or penalties and it is ordered that:

The interest and penalties not be applied to fine and/or restitution.

DEFENDANT: Brett Mathew Lattin                                    Judgment-Page <u>7 of 8</u>
CASE NUMBER: 10-CR-088-01J

## RESTITUTION

The defendant shall make restitution to the following persons in the following amounts:

**<u>Name of Payee</u>**                    **<u>Amount of Restitution</u>**

Office of the Clerk                          $2,450,000.00
United States District Court
2120 Capitol Avenue
2nd Floor, Room 2131
Cheyenne, WY  82001

**Restitution to be paid joint and several with co-defendant, Mark Allan McGregor 10-CR-87-01J**

DEFENDANT: Brett Mathew Lattin
CASE NUMBER: 10-CR-088-01J

Judgment-Page <u>8 of 8</u>

## SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

The total fine and other monetary penalties shall be due as follows:

> In full immediately. Any fine balance not paid immediately or through the Inmate Financial Responsibility Program shall be paid beginning the month following release

All financial penalty payments are to be made to the Clerks Office, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program.

**673980**   7/12/10

DEPARTMENT OF JUSTICE

*BK 2 Pg 103*

NOTICE OF LIEN FOR FINE AND/OR
RESTITUTION IMPOSED PURSUANT TO
THE ANTI-TERRORISM AND EFFECTIVE
DEATH PENALTY ACT OF 1996

Return to:
UNITED STATES ATTORNEY'S OFFICE        SERIAL NUMBER
District of Wyoming
PO Box 668                             <u>WY-10-149</u>
Cheyenne, WY  82003-0668

---

**FILED AT:**     **Sheridan County Clerk/Recorder**
               **224 South Main Street**
               **Sheridan, WY 82801**

---

**NOTICE** is hereby given of a lien against the property of the defendant named below.  Pursuant to Title 18, United States Code §3613(c), a fine or an order of restitution imposed pursuant to the provisions of subchapter C of chapter 227 is a lien in favor of the United States upon all property belonging to the person ordered to pay restitution.  Pursuant to §3613(d), a notice of lien shall be considered a notice of lien for taxes for the purposes of any State or local law providing for the filing of a tax lien.  The lien arises at the time of the entry of judgment and continues until the liability is satisfied, remitted, or set aside, or until it becomes unenforceable pursuant to §3613(b).

---

NAME OF DEFENDANT                      Lattin, Brett Mathew/***-**-1979

RESIDENCE:                             270 Wildflower Cir
                                       Sheridan, WY  82801

AMOUNT OF FINE/RESTITUTION:            $2,450,100.00

COURT NUMBER/DISTRICT:                 10-CR-00088-01J/District of Wyoming

DATE OF ENTRY OF JUDGMENT:             June 18, 2010

UNITED STATES ATTORNEY NUMBER:         2010A63594

RATE OF INTEREST WHEN PAYMENT IS DEFERRED BY THE COURT:      0%

If payment becomes past due, penalties totaling up to 25 percent of the principal amount past due may arise.  18 U.S.C. §3612(g).

**IMPORTANT RELEASE INFORMATION**—With respect to the lien listed above, this notice shall operate as a certificate of release pursuant to 18 U.S.C. §3613(b) by operation of law 20 years after date of sentence or service of incarceration.

**PLACE OF FILING:**

This notice was prepared and signed at  Cheyenne, Wyoming on this   <u>22nd</u>   day of  June,  2010.

*Mark Klaassen*
MARK A. KLAASSEN
Assistant United States Attorney
(307-772-2124)

GOVERNMENT
EXHIBIT
4
PENGAD-Bayonne, N.J.



**SHERIDAN COUNTY TITLE**
I N S U R A N C E   A G E N C Y

## SEARCH REPORT – 10 Oak Tree Court

**DATED:**    **12/31/2024**    **PROVIDED TO:**    **United States Attorney's Office**

**OWNER:**    **Brett M. Lattin**

**LEGAL DESCRIPTION:**    **Lot 23, Block BB, Powder Horn Ranch II Planned Unit Development.   A subdivision in Sheridan County, Wyoming, filed as Plat P-67 in the Office of the Sheridan County Clerk.**

**ENCUMBRANCES:**    **Lien Statement (Brett M. Lattin) in favor of Powder Horn Homeowners Association, Inc., recorded January 24, 2022, as Instrument No. 2022-775924, for the amount of $2,330.00.**

**Notice of Lien (Brett Mathew Lattin) in favor of United States Attorney's Office, recorded July 12, 2010, as Document # 673980, for the amount of $2,450,100.00.**

**Mortgage executed by Brett M. Lattin, single man, in favor of Stifel Bank & Trust (MERS) dated July 2, 2020 and recorded July 2, 2020 as Instrument No. 2020-759764, given to secure $480,000.00, which Mortgage was assigned to Wells Fargo Bank, N.A. by Instrument No. 2022-780999, dated August 22, 2022 and recorded August 22, 2022, which Mortgage was modified by Instrument No. 2023-787593, dated August 11, 2023 and recorded September 8, 2023.**

Easements, rights-of-way and notes set forth on the Plat of Powder Horn Ranch II, Planned Unit Development, Block BB, recorded April 10, 2003, Plat Number P-67.

Tenth Supplementary Declaration of Covenants, Conditions and Restrictions for The Powder Horn, dated August 6, 2003 and recorded August 7, 2003 in Book 445 of Deeds, Pages 609 to 612.

Extension of the Powder Horn Residential Development Standards, dated July 29, 2004 and recorded July 29, 2004 in Book 455 of Deeds, Pages 327 and 328.

Twentieth Supplementary Declaration of Covenants, Conditions and Restrictions for The Powder Horn, dated September 21, 2010 and recorded September 22, 2010 in Book 518 of Deeds, Pages 734 to 781.

1



GOVERNMENT
EXHIBIT
5

PENGAD-Bayonne, N.J.

Twenty-First Supplementary Declaration of Covenants, Conditions, and Restrictions for The Powder Horn, dated June 18, 2015 and recorded July 23, 2015 in Book 554 of Deeds, Pages 359 to 361.

Residential Development Standards dated February 20, 2017 and recorded March 10, 2017 in Book 565 of Deeds, Pages 434 to 475.

Twenty-Second Supplementary Declaration of Covenants, Conditions and Restrictions for The Powder Horn recorded June 30, 2017 in Book 567 of Deeds, Pages 515 to 519.

Residential Development Standards date June 1, 2018 and recorded June 15, 2018 in Book 574 of Deeds, Pages 446 to 488.

**JUDGMENTS FILED IN COUNTY CLERKS OFFICE:**

**Default Judgement against Brett M. Lattin, in favor of Powder Horn Homeowners Association, a Wyoming nonprofit corporation, in Civil Action No. 2022-113, in the Circuit Court, Fourth Judicial District, Sheridan County, State of Wyoming, recorded January 23, 2023, as Instrument No. 2023-783680, for the amount of $7,043.58.**

**Judgment against Brett Lattin, in favor of Rathmar, LLC, entered December 21, 2021 in Civil Action No. 2021-917, in the Fourth Judicial District Court, State of Wyoming, for the amount of $3,786.15, which was assigned to Collections Professionals, Inc. by Assignment of Judgement dated July 20, 2022.**

**MECHANICS' and/or MATERIALMEN'S LIENS:**

**NONE**

**FEDERAL or STATE TAX LIENS:**

**NONE**

**PROPERTY TAXES:**

**First half 2024 Taxes are paid in the amount of $2,930.45 on Tax Notice #028500. Second half 2024 Taxes are $2,930.44.**

**SPECIAL IMPROVEMENT DISTRICT:**

**NONE**



**2020-759763**    7/2/2020 3:22 PM PAGE: 1 OF 1
FEES: $12.00 HLM WARRANTY DEED
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

# WARRANTY DEED

Steve E. Rabon and Amy M. Rabon, husband and wife, GRANTORS, for and in consideration of Ten Dollars ($10.00) and other good and valuable consideration in hand paid, receipt whereof is hereby acknowledged, convey and warrant to Brett M. Lattin, a single person, GRANTEE, whose address is *PO Box 768 Sheridan WY 82801*, the following described real estate, situate in Sheridan County, State of Wyoming, hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of the State of Wyoming, more particularly described as follows:

> **Lot 23, Block BB, Powder Horn Ranch II Planned Unit Development, a subdivision in Sheridan County, Wyoming, filed as Plat P-67 in the Office of the Sheridan County Clerk;**

> TOGETHER WITH all improvements, hereditaments and appurtenances thereunto belonging to or appertaining thereto;

> SUBJECT TO all exceptions, reservations, rights-of-way, easements, covenants restrictions, and rights of record and subject of any state of facts which would be disclosed by an accurate survey or physical inspection of the premises and subject to building and zoning regulations and city, state and county subdivision laws.

WITNESS our hands this *2* day of *July*, 2020.

_____
Steve E. Rabon

_____
Amy M. Rabon

STATE OF *WY* )
                          )ss.
COUNTY OF *Sheridan* )

This instrument was acknowledged before me on the *2nd* day of *July*, 2020 by Steve E. Rabon.

WITNESS my hand and official seal.

_____
*Signature of Notarial Officer*
Title: Notary Public

My Commission expires: *5-13-22*

STATE OF *WY* )
                          )ss.
COUNTY OF *Sheridan* )

This instrument was acknowledged before me on the *2nd* day of *July*, 2020 by Amy M. Rabon.

WITNESS my hand and official seal.

_____
*Signature of Notarial Officer*
Title: Notary Public

My Commission expires *5-13-22*

**NO. 2020-759763 WARRANTY DEED**
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK
WILCOX AGENCY
SHERIDAN WY 82801



GOVERNMENT
EXHIBIT
*6*

\*\*\*Send All Notices to Assignee\*\*\*

RECORDING REQUESTED AND PREPARED BY:
**WELLS FARGO BANK, N.A.**
**2701 WELLS FARGO WAY**
**MAC: N9408-05E**
**MINNEAPOLIS, MN 55440-1629**

AND WHEN RECORDED MAIL TO:
**WELLS FARGO BANK, N.A.**
**MAC: N9408-05E**
**PO BOX 1629**
**MINNEAPOLIS, MN 55440-1629**
**ATTN: ASSIGNMENT TEAM**

**2022-780999**   8/22/2022 10:54 AM  PAGE: 1 OF 1
FEES: $12.00  PK  ASSIGN MORTGAGE
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

---

### ASSIGNMENT OF MORTGAGE

MIN: 100572300000802736
MERS Phone #: (888) 679-6377
For good and valuable consideration, the sufficiency of which is hereby acknowledged, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR STIFEL BANK & TRUST, ITS SUCCESSORS AND ASSIGNS** , P.O. BOX 2026 , FLINT, MI 48501-2026 , by these presents does convey, assign, transfer and set over to: WELLS FARGO BANK, NA 1 HOME CAMPUS , DES MOINES, IA 50328 , the following described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$480000.00** is recorded in the State of **WYOMING** , County of **Sheridan** Official Records, dated **07/02/2020** and recorded on **07/02/2020** , as Instrument No. **2020-759764** , .
Original Mortgagor: **BRETT M LATTIN, SINGLE MAN**
Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR STIFEL BANK & TRUST, ITS SUCCESSORS AND ASSIGNS** .
Property Address: **10 OAKTREE CT SHERIDAN, WY 82801-8000**
Date: **08/22/2022**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR STIFEL BANK & TRUST, ITS SUCCESSORS AND ASSIGNS**
By:

*John Kealy*

JOHN KEALY, Assistant Secretary

STATE OF MN
COUNTY OF Hennepin } S.S.

This instrument was acknowledged before me on **08/22/2022** by **JOHN KEALY** as **Assistant Secretary** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR STIFEL BANK & TRUST, ITS SUCCESSORS AND ASSIGNS**

SARAH A KADLEC, Notary Public
Commission #: 1062156600035
My Commission Expires: 01/31/2024

SARAH A KADLEC
Notary Public
State of Minnesota
My Commission Expires
January 31, 2024

50b1fdfa

NO. 2022-780999  ASSIGN MORTGAGE
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK
CSC ERECORDING  919 NORTH 1000 WEST
LOGAN UT 84321


GOVERNMENT
EXHIBIT
7

**When recorded, return to:**
**Stifel Bank & Trust**
**Attn: Final Document Department**
**12655 Olive Blvd., Suite 250**
**St. Louis, MO 63141**

2020-759764    7/2/2020 3:23 PM  PAGE: 1 OF 10
FEES: $39.00  HLM  MORTGAGE
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

Title Order No.: 51186
Escrow No.: 51186
LOAN #: 0138312400

———————————————[Space Above This Line For Recording Data]———————————————

# MORTGAGE

| MIN  1005723-0000080273-5 |
| --- |
| MERS PHONE #: 1-888-679-6377 |

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13,
18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
**(A) "Security Instrument"** means this document, which is dated  **July 2, 2020,**                together with
all Riders to this document.
**(B) "Borrower"** is  BRETT M LATTIN, SINGLE MAN.

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a
nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.**
MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box
2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender"** is  **Stifel Bank & Trust.**

Lender is  **a State Chartered Bank,**                                      organized and existing
under the laws of  **Missouri.**                                        Lender's address is
**12655 Olive Blvd., Suite 250, St. Louis, MO 63141.**

**(E) "Note"** means the promissory note signed by Borrower and dated  **July 2, 2020.**          The Note
states that Borrower owes Lender  **FOUR HUNDRED EIGHTY THOUSAND AND NO/100\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \***
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* **Dollars (U.S. $480,000.00          )**
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later
than  **August 1, 2050.**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to
be executed by Borrower [check box as applicable]:
☐ Adjustable Rate Rider       ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider               ☒ Planned Unit Development Rider  ☐ Other(s) [specify]
☐ 1-4 Family Rider            ☐ Biweekly Payment Rider
☐ V.A. Rider

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or
similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic
tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not
limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers,
and automated clearinghouse transfers.

**WYOMING**--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3051 1/01
Ellie Mae, Inc.                          Page 1 of 8                          WYEDEED   0315
                                                                              WYEDEED (CLS)




GOVERNMENT
EXHIBIT
8

LOAN #: 0138312400

**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the    **County**                                                              [Type of Recording Jurisdiction] of
**SHERIDAN**                                                  [Name of Recording Jurisdiction]:
**LOT 23, BLOCK BB, POWDER HORN RANCH II PLANNED UNIT DEVELEPEMENT.  A SUBDIVISION IN SHERIDAN COUNTY, WYOMING, FILED AS PLAT P-67 IN THE OFFICE OF THE SHERIDAN COUNTY CLERK.
APN #:  28500**

which currently has the address of   **10 OAKTREE CT, SHERIDAN,**
                                                                                                                   [Street] [City]
**Wyoming  82801-8000**            ("Property Address"):
                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal

2020-759764    7/2/2020 3:23 PM  PAGE: 2 OF 10
FEES: $39.00  HLM  MORTGAGE
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

LOAN #: 0138312400

balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.   Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.   Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.   Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.

WYOMING—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT** Form 3051 1/01
Ellie Mae, Inc.                                                                      Page 3 of 8                                        WYEDEED   0315
                                                                                                                                                    WYEDEED (CLS)

**LOAN #: 0138312400**

Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

**2020-759764**    7/2/2020 3:23 PM  PAGE: 4 OF 10
FEES: $39.00  HLM  MORTGAGE
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

LOAN #: 0138312400

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

WYOMING–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3051 1/01
Ellie Mae, Inc.

WYEDEED   0315
WYEDEED (CLS)



2020-759764    7/2/2020 3:23 PM  PAGE: 5 OF 10
FEES: $39.00  HLM  MORTGAGE
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

**LOAN #: 0138312400**

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2020-759764    7/2/2020 3:23 PM  PAGE: 6 OF 10
FEES: $39.00  HLM  MORTGAGE
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

**LOAN #: 0138312400**

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give notice of intent to foreclose to Borrower and to the person in possession of the Property, if different, in accordance with Applicable Law. Lender shall give notice of the sale to Borrower in the manner provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

WYOMING--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3051 1/01
Ellie Mae, Inc.    Page 7 of 8    WYEDEED 0315
WYEDEED (CLS)



**2020-759764**    7/2/2020 3:23 PM  PAGE: 7 OF 10
FEES: $39.00 HLM MORTGAGE
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

LOAN #: 0138312400

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower releases and waives all rights under and by virtue of the homestead exemption laws of Wyoming.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____  7/2/20  (Seal)
**BRETT M LATTIN**                        DATE

State of _W Y_
County of _Florida_

This instrument was acknowledged before me on JULY 2, 2020 (date) by BRETT M LATTIN (name(s) of person(s)).

(Seal, if any)

_____
Signature of Notarial Officer

_____
Title (and Rank)

My commission expires  5-73-22

Lender: Stifel Bank & Trust
NMLS ID: 375103
Loan Originator: Christopher Brook Mullen
NMLS ID: 438487

WYOMING—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3051 1/01
Ellie Mae, Inc.                                    Page 8 of 8                          WYEDEED  0315
                                                                                        WYEDEED (CLS)

**2020-759764**  7/2/2020 3:23 PM  PAGE: 8 OF 10
FEES: $39.00  HLM  MORTGAGE
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

LOAN #: 0138312400
MIN: 1005723-0000080273-6

## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **2nd**　　　　day of
**July, 2020**　　　　　　　　and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument")
of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note
to  **Stifel Bank & Trust, a State Chartered Bank**

(the "Lender")
of the same date and covering the Property described in the Security Instrument and
located at: **10 OAKTREE CT, SHERIDAN, WY 82801-8000.**

The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described
in  **COVENANTS, CONDITIONS AND RESTRICTIONS**

(the "Declaration").
The Property is a part of a planned unit development known as **POWDER HORN
RANCH II**
(the "PUD"). The Property also includes Borrower's interest in the homeowners association
or equivalent entity owning or managing the common areas and facilities of the PUD
(the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.  PUD Obligations.** Borrower shall perform all of Borrower's obligations under the
PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration;
(ii) articles of incorporation, trust instrument or any equivalent document which creates
the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners
Association. Borrower shall promptly pay, when due, all dues and assessments
imposed pursuant to the Constituent Documents.

**B.  Property Insurance.** So long as the Owners Association maintains, with a
generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property
which is satisfactory to Lender and which provides insurance coverage in the amounts
(including deductible levels), for the periods, and against loss by fire, hazards included
within the term "extended coverage," and any other hazards, including, but not limited
to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives
the provision in Section 3 for the Periodic Payment to Lender of the yearly premium
installments for property insurance on the Property; and (ii) Borrower's obligation under
Section 5 to maintain property insurance coverage on the Property is deemed satisfied
to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property
insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or
repair following a loss to the Property, or to common areas and facilities of the PUD, any
proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender
shall apply the proceeds to the sums secured by the Security Instrument, whether or
not then due, with the excess, if any, paid to Borrower.

**C.  Public Liability Insurance.** Borrower shall take such actions as may be
reasonable to ensure that the Owners Association maintains a public liability insurance
policy acceptable in form, amount, and extent of coverage to Lender.

**MULTISTATE PUD RIDER**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form  3150 1/01**
Ellie Mae, Inc.                              Page 1 of 2                         F3150RDU  0115
                                                                                 F3150RLU (CLS)



**2020-759764**   7/2/2020 3:23 PM  PAGE: 10 OF 10
FEES: $39.00  HLM  MORTGAGE
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

**LOAN #: 0138312400**

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____                    7/2/20          (Seal)
**BRETT M LATTIN**                                   DATE

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01
Ellie Mae, Inc.                         Page 2 of 2                    F3150RDU  0115
                                                                      F3150RLU (CLS)

**NO. 2020-759764  MORTGAGE**
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK
WILCOX AGENCY
SHERIDAN WY 82801

STATE OF WYOMING

COUNTY OF SHERIDAN

RATHMAR LLC

IN THE CIRCUIT COURT
FOURTH JUDICIAL DISTRICT
Before:
                    Judge

Plaintiff,

vs                          Civil Action No. CV2021-917

BRETT LATTIN



NO.  FILED IN CIRCUIT COURT OF
     SHERIDAN COUNTY WYOMING

Defendant(s).              AUG 15 2022

---

ASSIGNMENT OF JUDGMENT

BY _____  CLERK DEPUTY

FOR VALUABLE CONSIDERATION and/or pledged collection effort, receipt of which is hereby acknowledged RATHMAR LLC of the County of SHERIDAN, City of SHERIDAN, State of WYOMING, hereinafter referred to as "Assignor", hereby assigns to Collection Professionals, Inc., hereinafter referred to as "Assignee", all right title and interest in, and to final Judgment recovered by Assignor, RATHMAR LLC in the CIRCUIT Court, County of SHERIDAN, State of WYOMING on the 21 day of DECEMBER, 2021, for the sum of $3786.15, a certified copy of which is attached hereto, and all right, title, interest, claim, and demand therein, with full authority to Assignee to demand and receive the amount of the Judgment, or any part thereof, and costs to its own use, and on the payment of the Judgment or any part thereof, and to give BRETT LATTIN, , a discharge thereof.

Assignor authorizes Assignee to cause execution and/or garnishment to be issued, and to institute all other legal proceedings necessary to the enforcement of the Judgment, the same to be done at Assignee's own cost.

AOFJ  2503722 / 18

GOVERNMENT EXHIBIT

9

PENGAD-Bayonne, N.J.

Assignor swears and covenants to the Court and with Assignee that there is now due on the Judgment the sum of Four thousand three *98/100_____ Dollars ($4003.98) principal and costs. Plus interest from the date of 12-21-2021 (date of judgment). Assignor has not received and will not receive the amounts due on said Judgment or any part thereof without prior written consent of the Assignee, and Assignor will not release or discharge the Judgment, or any part thereof, without prior written consent of the Assignee. Assignor has not done and will not do anything to hinder or prevent Assignee from enforcing the Judgment.

IN WITNESS WHEREOF, Collection Professionals, Inc. has executed this Assignment of Judgment on behalf of RATHMAR LLC this 20 day of July , 20 22 .

RATHMAR LLC

BY: _M. Marshall_
Assignor

STATE OF Wyoming_____
COUNTY OF Sheridan_____
Subscribed and sworn to before me this 20 day of July ,
20 20 , by Valori L Marshall , Assignor.

Witness my hand and official seal.

Maryann McCormick_____
Notary Public

My Commission Expires:_____

MARYANN McCORMICK - NOTARY PUBLIC
COUNTY OF          STATE OF
SHERIDAN           WYOMING
My Commission Expires May 30, 2024

AOFJ1  2503722 / 18

2503722



# CIRCUIT COURT OF THE 4TH JUDICIAL DISTRICT
## SHERIDAN COUNTY, STATE OF WYOMING
### 224 S. Main Street, Suite B-7, Sheridan, Wyoming 82801
### 307-674-2940
## SMALL CLAIMS JUDGMENT

Rathmar L.L.C.
Plaintiff,

~ vs ~

Brett Lattin
Defendant.

FILED IN CIRCUIT COURT OF
SHERIDAN COUNTY WYOMING

DEC 21 2021

BY _____ CLERK
DEPUTY

JUDGE SHELLEY A. CUNDIFF

DOCKET NO. CV-2021-917

This case came before the court for trial on the __21__ day of __December__, 2021.
PLAINTIFF(S): __X__ Appeared in person. W/ Atty.
_____ Did not appear.  Mr. Terrell
DEFENDANT(S): __X__ Appeared in person. by phone
_____ Did not appear and was served.

Based upon the evidence presented, the court finds for the Plaintiff/Defendant as follows:
**IT IS HEREBY ORDERED, CONSIDERED, ADJUDGED AND DECREED as follows:**

__X__ Plaintiff has judgment against the Defendant:     _____ Defendant has judgment against the Plaintiff:

In the principal amount of.................. $ 3726 15      In the principal amount of $.................. $ _____
Costs ........................................ $ 60 —       Costs ........................................ $ _____
TOTAL...................................... $ 3786 15       TOTAL...................................... $ _____

Interest shall accrue at the rate of **10**% per annum.

OTHER: _____

DONE this __21__ day of __December__, 2021.

BY THE COURT

(SEAL)

JUDGE/MAGISTRATE

**TO THE JUDGMENT DEBTOR:  NOTICE OF RIGHT TO CLAIM EXEMPTIONS AND TO HEARING:**
    You are informed that since a judgment has been entered, the JUDGMENT CREDITOR may proceed to seize your property, funds or wages by execution or garnishment. You may be entitled to have the property, funds or wages seized returned to you as exempt from execution or garnishment. Following are possible claimed exemptions to which you may be entitled.
    1.  Social security benefits pursuant to 42 U.S.C. 407 and supplemental security income;
    2.  Veteran's benefits;
    3.  Black lung benefits;
    4.  Aid to families with dependent children and general assistance payments;
    5.  Federal civil service and state retirement system benefits as provided in 5 U.S.C. 8346 and W.S. Section 9-3-426 and 9-3-620;
    6.  Worker's compensation benefits;
    7.  Unemployment compensation benefits;
    8.  A portion of wages as provided in W.S. Section 1-15-408, or in the case of consumer credit sale, leases or loans, as provided by W.S. Section 40-14-505;
    9.  Homestead, personal articles and articles used for carrying on a trade or business to the extent provided by W.S. Section 1-20-101 through Section 1-20-109;
    10.  Other exemptions as provided by law.
    **IF PROPERTY, FUNDS, OR WAGES ARE EXECUTED ON OR GARNISHED, THEN AND ONLY THEN MAY YOU** assert your right to any of the foregoing exemptions and to do so you must file a written request for a hearing with the Clerk of this Court within ten (10) days after seizure of your property, funds or wages. If you fail to make a written request for a hearing and claim one (1) or more of the foregoing exemptions within ten (10) days after seizure of your property, you may waive or lose your right to claim the exemptions. IF NO PROPERTY IS SEIZED OR GARNISHED, YOU HAVE NO RIGHT TO A HEARING!

**CERTIFICATE OF SERVICE OF JUDGMENT AND NOTICE:** I hereby certify that I personally delivered or mailed by first class mail, postage prepaid, a copy of this Judgment on the __21__ day of __December '21__ to Plaintiff and Defendant listed above.

DATED this __21__ day of __December__, 2021

_____
Clerk/Deputy Clerk

GOVERNMENT
EXHIBIT
10

PENGAD-Bayonne, N.J.



**2023-783680**   1/23/2023 3:40 PM  PAGE: 1 OF 3
FEES: $29.00  PK  DEFAULT JUDGMENT - LEGAL
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

CERTIFIED COPY



# IN THE CIRCUIT COURT, FOURTH JUDICIAL DISTRICT
# IN AND FOR SHERIDAN COUNTY, WYOMING

POWDER HORN HOMEOWNERS          )          Civil Action No. CV-2022-113
ASSOCIATION, a Wyoming          )
nonprofit corporation,          )
                                )
            Plaintiff,          )
                                )          **NO.**
                                )          FILED IN CIRCUIT COURT OF
      vs.                       )          SHERIDAN COUNTY WYOMING
                                )
BRETT M. LATTIN,                )          **JAN 1 8 2023**
                                )
            Defendant.          )
                                )                        CLERK
                                           BY_____ DEPUTY

_____

## DEFAULT JUDGMENT

_____

THIS MATTER came before the Court on the Plaintiff's Motion for Default Judgment

against Defendant Brett M. Lattin.  The Court, having reviewed the pleadings, including the

affidavits submitted herein, and being otherwise fully advised in the premises, FINDS as follows:

1.      Plaintiff filed the Complaint on March 8, 2022.

2.      Brett M. Lattin was personally served with copies of the Summons and Complaint

on March 11, 2022 in Sheridan, Wyoming. Defendant's answer deadline was March 31, 2022.

3.      The Defendant failed to answer or otherwise respond to the Complaint. As a result,

this Court entered default against the Defendant pursuant to W.R.C.P. 55(a).

4.      This Court has jurisdiction of the subject matter and parties to this action.

5.      There is no just reason for delaying the entry of judgment.

6.      Plaintiff is a nonprofit corporation authorized to do business in the State of

Wyoming.

7.      Defendant is an individual residing in Sheridan, Sheridan County, Wyoming.

DEFAULT JUDGMENT
Page 1 of 3



GOVERNMENT
EXHIBIT
11

**2023-783680**    1/23/2023 3:40 PM  PAGE: 2 OF 3
FEES: $29.00  PK  DEFAULT JUDGMENT - LEGAL
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

8.    The Declaration of Covenants, Conditions and Restrictions, as amended from time to time (the "Covenants") for the community development known as the Powder Horn ("Powder Horn") were executed on September 26, 1995 and recorded on September 27, 1995 as Document No. 209051 in Book 375 at Page 563 of the Sheridan County, Wyoming land records.

9.    The Powder Horn Homeowners Association, Inc. ("HOA") has "the power, duty and responsibility of . . . collecting assessments and charges hereinafter prescribed[]..." Covenants, Article I (a). 15.

10.    The HOA is also vested with the right, power, and duty to enforce the Covenants and to "l[ie]n, enjoin and/or seek damages from any Owner for violation of such provisions of rules". Covenants, Article IV, 4.01(o); *see also*, Article XII, 12.05.

11.    Defendant has refused and/or failed to timely pay his monthly assessments and the HOA filed a lien against Defendant's Lot for the delinquent assessments. The lien statement was recorded on January 24, 2022 as document number 2022-775924 in the land records of Sheridan County, Wyoming. A copy of the lien statement is attached as Exhibit B to the Complaint.

12.    Defendant owes Four Thousand One Hundred Forty Dollars and 00/100 ($4,170.00) to the HOA for unpaid HOA Fees and Late Fees through November 30, 2022, exclusive of attorney's fees, costs, and accruing interest.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment be, and the same hereby is, entered in favor of Plaintiff and against Defendant Brett M. Lattin in the amount of $4,170.00, through November 30, 2022, plus Plaintiff's reasonable attorney's fees and costs in bringing this action in the amount of $2,873.58 for a total judgment through November 30, 2022 of $7,043.58. Post-judgment interest which shall accrue at the rate of ten percent (10%) per year pursuant to W.S. § 1-16-102(a) from the date of entry of this judgment.

DEFAULT JUDGMENT
Page 2 of 3

2023-783680    1/23/2023 3:40 PM PAGE: 3 OF 3
FEES: $29.00 PK  DEFAULT JUDGMENT - LEGAL
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

DONE IN OPEN COURT this __3__ day of __Jan__, 2023.

BY THE COURT:

ORIGINAL SIGNED BY
SHELLEY A. CUNDIFF
CIRCUIT COURT JUDGE

Copies to:
Amanda K. Roberts / Erin E. Thimmesch
Brett Lattin

**NO. 2023-783680  DEFAULT JUDGMENT - LEGAL**
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK
LONABAUGH & RIGGS  DRAWER 5059
SHERIDAN WY 82801

DEFAULT JUDGMENT
Page 3 of 3

**2022-775924**   1/24/2022 3:38 PM  PAGE: 1 OF 6
FEES: $27.00  PK  LIEN STATEMENT
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

## LIEN STATEMENT
(W.S. Title 29, Chapter 1)

This Lien Statement is filed on behalf of Powder Horn Homeowners Association, Inc., a Wyoming non-profit corporation c/o Lonabaugh and Riggs, LLP, P.O. Drawer 5059, Sheridan, Wyoming 82801 ("Association") pursuant to Title 29 of the Wyoming Statutes to secure payment for Association dues and fees hereinafter set forth:

1.    NAME AND ADDRESS OF LIEN CLAIMANT:

Powder Horn Homeowners Association, Inc.
c/o Erin E. Emanuel
Lonabaugh and Riggs, LLP
50 E. Loucks, Suite 110
P.O. Drawer 5059
Sheridan, WY 82801

2.    NAME AND ADDRESS OF THE PERSON/ENTITY WHOM IS CONTRACTUALLY RESPONSIBLE TO PAY THE DEBT SECURED BY THE LIEN AND THE RECORD OWNER AGAINST WHOSE PROPERTY THE LIEN IS FILED:

Brett M. Lattin
P.O. Box 768
Sheridan, WY 82801-0768

Brett M. Lattin
10 Oak Tree Court
Sheridan, WY 82801

Brett M. Lattin, a single person, is the record owner of the property described in paragraph 6 below and is contractually responsible to pay the debt secured by the lien, pursuant to the Declaration of Covenants, Conditions and Restrictions for the Powder Horn, ¶¶ 6.02 and 6.03 (Recorded 9/27/95, BK 375, PG 563 No. 209051 with the Sheridan County Clerk and Recorder's Office), as amended. The lien is claimed against all the right, title and interest of Brett M. Lattin, a single person, in and to the real property described in paragraph 6 below and all other items and property, real or personal, which are subject to liens pursuant to W.S. § 29-1-301 et seq.

3.    AMOUNT CLAIMED TO BE DUE AND OWING:

The lien amount claimed due and owing, as of January 24, 2022, is $2,330.00, plus interest, and costs of collection including attorney fees and costs, which will continue to accrue. This amount will increase daily.

GOVERNMENT EXHIBIT
12
PENGAD-Bayonne, N. J.

**2022-775924**    1/24/2022 3:38 PM  PAGE: 2 OF 6
FEES: $27.00  PK  LIEN STATEMENT
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

4.      <u>ITEMIZED LIST SETTING FORTH AND DESCRIBING FEE/SUMMARY OF
        LIEN CLAIMANT'S CONTRACT AND A STATEMENT OF THE LOCATION
        WHERE THE CONTRACT CAN BE OBTAINED:</u>

Pursuant to the Declaration of Covenants, Conditions and Restrictions for the Powder
Horn, ¶¶ 6.02 and 6.03 (Recorded 9/27/95, BK 375, PG 563 No. 209051 with the Sheridan County
Clerk and Recorder's Office), as amended, the Association has the ability to assess: regular
assessments or charges for maintenance, taxes and insurance on portions of the Property and the
Common Areas, special assessments for capital improvements or unusual or emergency matters,
special individual assessments levied against individual Owners/Lots to reimburse the Association
for extra costs for maintenance and repairs and individual assessments and fines for violations of
rules and regulations. The above assessment represents past due regular assessments or charges
for maintenance for the following parcel: Lot 23, Block BB, Powder Horn Ranch II Planned Unit
Development. A subdivision in Sheridan County, Wyoming, filed as Plat P-67 in the Office of the
Sheridan County Clerk. See invoice attached as **Exhibit A** in the amount of $2,330.00.

5.      <u>DATE WHEN WORK WAS LAST PERFORMED OR SERVICES WERE LAST
        RENDERED:</u>

Ongoing, but fees were past due as of January 24, 2022.

6.      <u>LEGAL DESCRIPTION OF THE PREMISES WHERE THE MATERIALS
        WERE FURNISHED OR UPON WHICH THE WORK WAS PERFORMED OR
        FOR WHICH THE SERVICES WERE RENDERED:</u>

Lot 23, Block BB, Powder Horn Ranch II Planned Unit Development. A subdivision in Sheridan
County, Wyoming, filed as Plat P-67 in the Office of the Sheridan County Clerk.

DATED this _24_ day of January, 2022.

LONABAUGH AND RIGGS, LLP

By: _Erin E. Emanuel_

Erin E. Emanuel, WSB No. 8-6701
*Attorneys for Powder Horn Homeowners
Association, Inc.*
P.O. Drawer 5059
50 E. Loucks Street, Suite 110
Sheridan, WY 82801
(307) 672-7444

**2022-775924**    1/24/2022 3:38 PM  PAGE: 3 OF 6
FEES: $27.00  PK  LIEN STATEMENT
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

STATE OF WYOMING                )
                                                    : ss
COUNTY OF SHERIDAN         )

I, Erin E. Emanuel, having been first duly sworn upon my oath, depose and state as follows:
that I am the attorney for the Lien Claimant herein; that I have read the above and foregoing LIEN
STATEMENT and understand the contents thereof; that the contents thereof are true and correct
to the best of my knowledge, information and belief; and that the amounts set forth therein are a
true and correct accounting of all amounts due and owing to the Lien Claimant after just credits
have been given.

_Erin E. Emanuel_
**Erin E. Emanuel**

The foregoing LIEN STATEMENT was subscribed and sworn to before me this 24th day
of January, 2022, by Erin E. Emanuel.

WITNESS my hand and official seal.

RACHEL BORGIALLI - NOTARY PUBLIC
COUNTY OF SHERIDAN    STATE OF WYOMING
My Commission Expires May 29, 2024

_Rachel Borgialli_
Notary Public

My commission expires: 5-29-2024

Page 3 of 3

Powder Horn Homeowners Association
P.O. Box 6608
Sheridan, WY 82801
(307) 674-7491

# Statement

| Date |
|---|
| 1/24/2022 |

**2022-775924**    1/24/2022 3:38 PM  PAGE: 4 OF 6
FEES: $27.00  PK  LIEN STATEMENT
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

| To: |
|---|
| Brett M. Lattin |
| 10 Oak Tree Court |
| Sheridan, WY 82801 |
| BB-23 |

| | Amount Due | Amount Enc. |
|---|---|---|
| | $2,330.00 | |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 12/31/2020 | Balance forward | | -155.00 |
| 01/01/2021 | INV #10661. | 50.00 | -105.00 |
| | --- Sewer Fee $50.00 | | |
| 01/01/2021 | INV #11158. | 85.00 | -20.00 |
| | --- HOA Discounted Fees $85.00 | | |
| 01/01/2021 | INV #11522. | 30.00 | 10.00 |
| | --- Trash Fees -Billed $30.00 | | |
| 02/01/2021 | INV #11677. | 50.00 | 60.00 |
| | --- Sewer Fee $50.00 | | |
| 02/01/2021 | INV #12188. | 85.00 | 145.00 |
| | --- HOA Discounted Fees $85.00 | | |
| 02/01/2021 | INV #12546. | 30.00 | 175.00 |
| | --- Trash Fees -Billed $30.00 | | |
| 02/28/2021 | GENJRNL #AJE. Late Fee February-Lattin BB-23 | 30.00 | 205.00 |
| 03/01/2021 | INV #12694. | 50.00 | 255.00 |
| | --- Sewer Fee $50.00 | | |
| 03/01/2021 | INV #13207. | 85.00 | 340.00 |
| | --- HOA Discounted Fees $85.00 | | |
| 03/01/2021 | INV #13563. | 30.00 | 370.00 |
| | --- Trash Fees -Billed $30.00 | | |
| 03/31/2021 | GENJRNL #AJE. Late Fee March-Lattin BB-23 | 30.00 | 400.00 |
| 04/01/2021 | INV #13721. | 50.00 | 450.00 |
| | --- Sewer Fee $50.00 | | |
| 04/01/2021 | INV #14248. | 85.00 | 535.00 |
| | --- HOA Discounted Fees $85.00 | | |
| 04/01/2021 | INV #14601. | 30.00 | 565.00 |
| | --- Trash Fees -Billed $30.00 | | |
| 04/30/2021 | GENJRNL #AJE. Late Fee April-Lattin BB-23 | 30.00 | 595.00 |
| 05/01/2021 | INV #14760. | 50.00 | 645.00 |
| | --- Sewer Fee $50.00 | | |
| 05/01/2021 | INV #15297. | 85.00 | 730.00 |
| | --- HOA Discounted Fees $85.00 | | |
| 05/01/2021 | INV #15644. | 30.00 | 760.00 |
| | --- Trash Fees -Billed $30.00 | | |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 205.00 | 195.00 | 195.00 | 1,735.00 | $2,330.00 |

Powder Horn Homeowners Association

P.O. Box 6608
Sheridan, WY 82801
(307) 674-7491

# Statement

| Date |
|---|
| 1/24/2022 |

**2022-775924**   1/24/2022 3:38 PM  PAGE: 5 OF 6
FEES: $27.00  PK  LIEN STATEMENT
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

To:

Brett M. Lattin
10 Oak Tree Court
Sheridan, WY 82801
BB-23

| | Amount Due | Amount Enc. |
|---|---|---|
| | $2,330.00 | |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 05/31/2021 | GENJRNL #AJE. Late Fee May-Lattin BB-23 | 30.00 | 790.00 |
| 06/01/2021 | INV #15831. | 50.00 | 840.00 |
| | --- Sewer Fee $50.00 | | |
| 06/01/2021 | INV #16371. | 85.00 | 925.00 |
| | --- HOA Discounted Fees $85.00 | | |
| 06/01/2021 | INV #16722. | 30.00 | 955.00 |
| | --- Trash Fees -Billed $30.00 | | |
| 06/30/2021 | GENJRNL #AJE. Late Fee June-Lattin BB-23 | 30.00 | 985.00 |
| 07/01/2021 | INV #16891. | 50.00 | 1,035.00 |
| | --- Sewer Fee $50.00 | | |
| 07/01/2021 | INV #17430. | 85.00 | 1,120.00 |
| | --- HOA Discounted Fees $85.00 | | |
| 07/01/2021 | INV #17779. | 30.00 | 1,150.00 |
| | --- Trash Fees -Billed $30.00 | | |
| 07/30/2021 | GENJRNL #AJE. Late Fee July-Lattin BB-23 | 30.00 | 1,180.00 |
| 08/01/2021 | INV #17948. | 50.00 | 1,230.00 |
| | --- Sewer Fee $50.00 | | |
| 08/01/2021 | INV #18492. | 85.00 | 1,315.00 |
| | --- HOA Discounted Fees $85.00 | | |
| 08/01/2021 | INV #18840. | 30.00 | 1,345.00 |
| | --- Trash Fees -Billed $30.00 | | |
| 08/31/2021 | GENJRNL #AJE. Late Fee August-Lattin B-23 | 30.00 | 1,375.00 |
| 09/01/2021 | INV #19007. | 50.00 | 1,425.00 |
| | --- Sewer Fee $50.00 | | |
| 09/01/2021 | INV #19552. | 85.00 | 1,510.00 |
| | --- HOA Discounted Fees $85.00 | | |
| 09/01/2021 | INV #19895. | 30.00 | 1,540.00 |
| | --- Trash Fees -Billed $30.00 | | |
| 09/30/2021 | GENJRNL #AJE. Late Fee September-Lattin BB-23 | 30.00 | 1,570.00 |
| 10/01/2021 | INV #20067. | 50.00 | 1,620.00 |
| | --- Sewer Fee $50.00 | | |
| 10/01/2021 | INV #20618. | 85.00 | 1,705.00 |
| | --- HOA Discounted Fees $85.00 | | |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 205.00 | 195.00 | 195.00 | 1,735.00 | $2,330.00 |

Powder Horn Homeowners Association
P.O. Box 6608
Sheridan, WY 82801
(307) 674-7491

# Statement

| Date |
| --- |
| 1/24/2022 |

| To: |
| --- |
| Brett M. Lattin<br>10 Oak Tree Court<br>Sheridan, WY 82801<br>BB-23 |

**2022-775924**    1/24/2022 3:38 PM  PAGE: 6 OF 6
FEES: $27.00  PK  LIEN STATEMENT
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

| | | Amount Due | Amount Enc. |
| --- | --- | --- | --- |
| | | $2,330.00 | |
| Date | Transaction | Amount | Balance |
| 10/01/2021 | INV #20965.<br>--- Trash Fees -Billed $30.00 | 30.00 | 1,735.00 |
| 10/29/2021 | GENJRNL #AJE. Late Fee October-Lattin BB-23 | 30.00 | 1,765.00 |
| 11/01/2021 | INV #21141.<br>--- Sewer Fee $50.00 | 50.00 | 1,815.00 |
| 11/01/2021 | INV #21696.<br>--- HOA Discounted Fees $85.00 | 85.00 | 1,900.00 |
| 11/01/2021 | INV #22042.<br>--- Trash Fees -Billed $30.00 | 30.00 | 1,930.00 |
| 11/30/2021 | GENJRNL #AJE. Late Fee November-Lattin BB-23 | 30.00 | 1,960.00 |
| 12/01/2021 | INV #22218.<br>--- Sewer Fee $50.00 | 50.00 | 2,010.00 |
| 12/01/2021 | INV #22773.<br>--- HOA Discounted Fees $85.00 | 85.00 | 2,095.00 |
| 12/01/2021 | INV #23120.<br>--- Trash Fees -Billed $30.00 | 30.00 | 2,125.00 |
| 12/31/2021 | GENJRNL #AJE. Late Fee December-Lattin BB-23 | 30.00 | 2,155.00 |
| 01/01/2022 | INV #23262.<br>--- Sewer Fee $60.00 | 60.00 | 2,215.00 |
| 01/01/2022 | INV #23755.<br>--- HOA Discounted Fees $85.00 | 85.00 | 2,300.00 |
| 01/01/2022 | INV #24104.<br>--- Trash Fees -Billed $30.00 | 30.00 | 2,330.00 |

**NO. 2022-775924  LIEN STATEMENT**
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK
LONABAUGH & RIGGS  DRAWER 5059
SHERIDAN WY 82801

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
| --- | --- | --- | --- | --- | --- |
| 0.00 | 205.00 | 195.00 | 195.00 | 1,735.00 | $2,330.00 |

**After recording please return to:**
SERVICELINK
LOAN            MODIFICATION
SOLUTIONS
3220 EL CAMINO REAL
IRVINE, CA 92602

2023-787593    9/8/2023 10:39 AM PAGE: 1 OF 8
FEES: $33.00  PK  MODIFICATION OF MORTGAGE
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

**Tax/Parcel #: 0000028500**

———————————————— *[Space Above This Line For Recording Data]* ————————————————

**Original Principal Amount $480,000.00**          **Investor Loan No: 4021041727**
**Unpaid Principal Amount $452,953.72**          **Loan No: (scan barcode)**
**New Principal Amount $461,930.53**
**Total Cap Amount $8,976.81**                          230259221

# Loan Modification Agreement
## (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **11th** day of **August, 2023** between **BRETT M LATTIN** ("Borrower") and **WELLS FARGO BANK, N.A.** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **July 2, 2020**, in the amount of **$480,000.00** and recorded on **July 2, 2020** in Instrument No. CRFN **2020-759764**, of the **SHERIDAN** County Records of **WYOMING** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at
**10 OAKTREE CT, SHERIDAN, WY 82801-8000,**
(Property Address)

the real property described being set forth as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **September 1, 2023**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$461,930.53**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **2.875%**, from **August 1, 2023**.  Borrower promises to make monthly payments of principal and interest of U.S.





GOVERNMENT
EXHIBIT
13

2023-787593    9/8/2023 10:39 AM  PAGE: 2 OF 8
FEES: $33.00  PK  MODIFICATION OF MORTGAGE
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

**$1,620.54,** beginning on the **1st** day of **September, 2023,** and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.  The yearly rate of **2.875%** will remain in effect until principal and interest are paid in full.  If on **August 1, 2063** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    (b)  all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Borrower understands and agrees that:

    (a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law.  Also,



**2023-787593**    9/8/2023 10:39 AM  PAGE: 3 OF 8
FEES: $33.00  PK  MODIFICATION OF MORTGAGE
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f) Limited Power of Attorney/Correction Agreement. I hereby grant Wells Fargo Home Mortgage, as lender, limited power of attorney to correct and initial all typographical or clerical errors or omissions discovered in the Modification Agreement. In the event this limited power of attorney is exercised, I will be notified and receive a copy of the corrected document.  This limited power of attorney shall automatically terminate 180 days from the closing date of my Modification, or the date any and all documents that the lender requires to be recorded have been successfully recorded at the appropriate office, whichever is later. Within 10 (ten) days, I agree to cooperate and execute any and all documents required by the lender as necessary to effectuate the terms and conditions of this Agreement.

(g) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

6. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

**2023-787593**    9/8/2023 10:39 AM  PAGE: 4 OF 8
FEES: $33.00  PK  MODIFICATION OF MORTGAGE
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

7.  Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the



**2023-787593**    9/8/2023 10:39 AM PAGE: 5 OF 8
FEES: $33.00 PK  MODIFICATION OF MORTGAGE
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

8. If the homeowners insurance should lapse, Wells Fargo Home Mortgage reserves the right to place Lender Placed Insurance (LPI) on the account. If LPI is placed on the account the monthly payment could increase. All other terms of the modification Agreement will not be affected by the LPI and will remain in effect with accordance to this Agreement.

9. With this modification, I understand that my full contractual payment will be due each month. Any previous options to pay less, such as only the interest or an alternative minimum payment, will no longer be available.

10. Borrower must deliver to Wells Fargo Home Mortgage a properly signed modification agreement and all enclosed documents without alteration by **September 05, 2023** . If Borrower does not return a properly signed modification agreement and all enclosed documents by this date and make the first monthly payment pursuant to the terms of this modification agreement. , Wells Fargo Home Mortgage may deny or cancel this modification agreement. . If the Borrower returns a properly signed modification agreement by said date, payments pursuant to the modification agreement are due as outlined in this modification agreement. . Wells Fargo Home Mortgage may deny or cancel this modification agreement. if Borrower fails to make the first payment due pursuant to this modification agreement.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging ☐.

**By signing below, I certify I have read this Agreement in its entirety, that I know and understand the meaning and intent of this Agreement and that I enter into this Agreement**



2023-787593    9/8/2023 10:39 AM  PAGE: 6 OF 8
FEES: $33.00  PK  MODIFICATION OF MORTGAGE
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

**knowingly and voluntarily.  By signing below, I agree to all terms and conditions described on every page of this Agreement.**

_____  (Seal)    8/24/23
Borrower: BRETT M LATTIN            Date

_____  (Seal)    _____
Borrower:                          Date

_____  (Seal)    _____
Borrower:                          Date

———— *[Space Below This Line For Acknowledgment in Accordance with Laws of Jurisdiction]* ————

**ACKNOWLEDGMENT**

State of  WY                    §
County of  SHERIDAN             §
                               §

This instrument was acknowledged before me on  8/24/2023  by **BRETT M LATTIN.**

_____
Signature of Notarial Officer

CRISTINE  MCLAUGHLIN
Printed Name

PERSONAL  BANKER
Title (and Rank)

┌─────────────────────────────┐
│   CRISTINE MCLAUGHLIN        │
│     NOTARY PUBLIC            │
│    STATE OF WYOMING          │
│   COMMISSION ID: 168410      │
│ MY COMMISSION EXPIRES: 04/20/2029 │
└─────────────────────────────┘

(Seal, if any)

My Commission Expires:  04-20-2029

Loan Modification Agreement          Page 6 of 8          2027SWY 06/22



2023-787593    9/8/2023 10:39 AM  PAGE: 7 OF 8
FEES: $33.00  PK  MODIFICATION OF MORTGAGE
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
**WELLS FARGO BANK, N.A.**

By: _Naeem Ayub_

Naeem S M Ayub
Vice President Loan Documentation

-Lender

_09-05-2023_

Date of Lender's Signature

## ACKNOWLEDGMENT

State of _Minnesota_                §
                                    §
County of _Ramsay_                  §

This instrument was acknowledged before me on _09 / 05 / 2023_ by

_Naeem SM Ayub_
as _Vice President Loan Documentation_ of **WELLS FARGO BANK, N.A.**.

_Signature_

Signature of Notarial Officer

Yared Daisso Areba
Printed Name

_Notary Public_
Title or Rank

YARED DAISSO AREBA
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2027

Serial Number, if any: _N/A_

(Seal)

My Commission Expires: ___01/31/2027___

---

Loan Modification Agreement                Page 7 of 8                20275WY  06/22



**2023-787593**     9/8/2023 10:39 AM  PAGE: 8 OF 8
FEES: $33.00  PK  MODIFICATION OF MORTGAGE
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK

## EXHIBIT A

**BORROWER(S): BRETT M LATTIN**

**LOAN NUMBER:** (scan barcode)

**LEGAL DESCRIPTION:**

**STATE OF WYOMING, COUNTY OF SHERIDAN, AND DESCRIBED AS FOLLOWS:**

**THE FOLLOWING DESCRIBED REAL ESTATE, SITUATE IN SHERIDAN COUNTY, STATE OF WYOMING, HEREBY RELEASING AND WAIVING ALL RIGHTS UNDER AND BY VIRTUE OF THE HOMESTEAD EXEMPTION LAWS OF THE STATE OF WYOMING, MORE PARTICULARLY DESCRIBED AS FOLLOWS:**

**LOT 23, BLOCK BB, POWDER HORN RANCH II PLANNED UNIT DEVELOPMENT, A SUBDIVISION IN SHERIDAN COUNTY, WYOMING, FILED AS PLAT P-67 IN THE OFFICE OF THE SHERIDAN COUNTY CLERK.**

**Parcel ID Number: 0000028500**
**ALSO KNOWN AS: 10 OAKTREE CT, SHERIDAN, WY 82801-8000**



**NO. 2023-787593  MODIFICATION OF MORTGAGE**
EDA SCHUNK THOMPSON, SHERIDAN COUNTY CLERK
SERVICELINK LOAN MODIFICATION  3220 EL CAMINO REAL
 IRVINE CA 92602